UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| BANK OF COMMERCE AS SUCCESSOR IN INTEREST TO THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF COUNTRY BANK | ) ) ) ) ) ) | Case No. 4:13-cv-04001-SLD-JEH |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| FYRE LAKE VENTURES, LLC, BLAIR MINTON, GREGORY YATES, KENNETH HOFFMAN, JR. PAUL VAN HENKELUM, GERALD LEE, JEROME EPPING, JEFFREY FRYE, JAMES GAUGERT, U.S. DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE, DIRECTOR OF EMPLOYMENT SECURITY OF THE STATE OF ILLINOIS, 3-D CONCRETE, INC., D/B/A GOLF CREATIONS, QC SILT FENCE, INC., ROCK RIVER ELECTRIC, INC, VAN HENKELUM, LYNCH, & ASSOCIATES, LLC, V2G SURVEYING LLC, and UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## ORDER

The Bank of Commerce (the "Bank"), as Successor in Interest to the Federal Deposit

Insurance Corporation (the "FDIC") in its capacity as receiver for the failed Country Bank, is

suing Fyre Lake Ventures, LLC ("Fyre Lake") for breach of a note, for foreclosure on property

mortgaged as security for the note, and for judgment against some of Fyre Lake's guarantors on

the note.[1]  Before the court are several motions:  the Bank's motion for summary judgment on its foreclosure claim, ECF No. 85; the Bank's motion for summary judgment against certain of the guarantors, ECF No. 86; Defendant Kenneth Hoffman's motion for summary judgment as to the claim against him as a guarantor, ECF No. 89; Defendant Gerald Lee's Motion for Extension of Time to  File Answer, ECF No. 105; the Bank's motion to expedite a ruling on its motion for summary judgment on the foreclosure claim, ECF No. 106; the Bank's Motion for Default Judgment against Defendant Paul Van Henkelum, ECF No. 112; the Bank's Motion for Hearing Status and Case Management, ECF No. 115; and the Bank's Motion for Summary Judgment against Kenneth Hoffman, ECF No. 116.  For the following reasons, the Bank's motion for summary judgment on its foreclosure claim is GRANTED.  The Bank's motion for summary judgment against certain of the guarantors is GRANTED IN PART and DENIED IN PART. Hoffman's motion for summary judgment is DENIED.  The Bank's Motion for Default Judgment against Van Henkelum is GRANTED.  Lee's motion for extension of time is MOOT. The Bank's motions to expedite and its motion for a status conference are MOOT.  The Court declines to rule at this time on the Bank's Motion for Summary Judgment against Hoffman, as the motion is not yet fully briefed.

## BACKGROUND

On January 2, 2013, the FDIC filed a complaint against Fyre Lake, Blair Minton, Gregory Yates, Kenneth Hoffman, Jr., Paul Van Henkelum, Gerald Lee, Jerome Epping, Jeffrey Frye, James Gaugert, and unknown owners and non-record claimants, alleging that Fyre Lake

---

[1] The Bank of Commerce was substituted late in the proceedings, after the FDIC assigned its interest in the note, mortgage, and guaranties to the Bank.  *See* p. 5, *infra*.  This Court originally had subject matter jurisdiction because the FDIC filed its claims pursuant to 12 U.S.C. § 1819(b)(2)(A), which provides that any civil suit to which the FDIC is a party is "deemed to arise under the laws of the United States."  Generally, those to whom the FDIC assigns its interest in loan agreements may assert the FDIC's rights, and a federal court that has jurisdiction by operation of 12 U.S.C. § 1819(b)(2)(A) will not lose it when a party is substituted for the FDIC.  *See King v. FDIC*, No. 91 C 1623, 1992 WL 402966, at *5 (N.D. Ill. Dec. 30, 1992).  Thus, the Court retains jurisdiction over the matter.  For convenience, the Court refers to the FDIC's motions as the Bank's motions.

had failed to make quarterly payments on a $9,000,000 loan (the "Fyre Lake loan"), and seeking to foreclose on the property that had been mortgaged to secure the loan. Compl. 9–16, ECF No. 1. The FDIC also sought judgment against all other named defendants as guarantors of the note, in the amounts by which the parties had allegedly agreed to guarantee the note—$900,000 for most of the guarantors, but $650,000 for Epping, and $325,000 for Frye and Guagert. *Id.* at 16–27.

Fyre Lake and Minton jointly filed an unverified Answer, ECF No. 35, asserting as affirmative defenses that Country Bank, which made the initial loan before being taken over by the FDIC, had not provided valuable consideration in exchange for Minton's guaranty (the "Minton Guaranty"), and had assured Minton that it would never collect on the Minton Guaranty. Minton/Fyre Lake Answer 32. Fyre Lake admitted that it had failed to make "certain payments" on the note, and claimed no affirmative defenses. *Id.* at 14. Lee and Yates filed verified answers, ECF Nos. 32, 42, respectively. Lee asserted as a defense that his guaranty (the "Lee Guaranty") was obtained by a course of fraud and self-dealing, and without valuable consideration, and that the FDIC failed to state a claim upon which relief could be granted. Lee Answer 39. Yates asserted as a defense that his guaranty (the "Yates guaranty") was obtained for no valuable consideration, and via a course of self-dealing. Yates Answer 17. Epping and Gaugert filed unverified answers, ECF Nos. 33, 34, respectively, asserting defenses of self-dealing. Epping Answer 14; Gaugert Answer 14. Frye filed an unverified answer, ECF No. 19, 50, asserting that his guaranty was acquired without valuable consideration and through a course of self-dealing. Frye Answer 15–16, ECF No. 50. Hoffman filed a motion to dismiss, ECF No. 23, and an amended motion to dismiss, ECF No. 53, which this Court denied, ECF No. 74. Van

Henkelum, although properly served, ECF No. 28, has to date filed no responsive pleading in this matter.

On May 24, 2013, the FDIC filed an Amended Complaint, ECF No. 45, joining as defendants various other parties (Department of the Treasury – Internal Revenue Service; Director of Employment Security of the State of Illinois; 3-D Concrete, Inc.; Midwest Golf Development, Inc.; QC Silt Fence, Inc.; Rock River Electric, Inc.; Van Henkelum, Lynch & Associates, LLC; and V2G Surveying, LLC) who held liens against the mortgaged property, and requested that all these parties' interests in the mortgaged property be declared junior to its own. Am. Compl. 14. Yates and Lee filed answers to the amended complaint, again verified, ECF Nos. 46, 47, respectively, as did the parties who had originally filed unverified answers, all of which were, again, unverified. ECF Nos. 49, 50, 51, 52. Hoffman filed a verified answer, ECF No. 77, asserting as defenses lack of consideration, self-dealing, failure to state a claim, and the fact that Hoffman had previously executed a release with the FDIC from a separate debt obligation. Hoffman Answer 23–24.

As for the alleged junior lienholders, 3-D Concrete, Inc. ("3-D Concrete") filed an answer and counterclaim, ECF No. 66. 3-D Concrete eventually dismissed the counterclaim. ECF No. 76. Of the remaining defendants, only the Internal Revenue Service ("IRS") filed a responsive pleading, an answer, ECF No. 69, which alleged the existence of a federal tax lien against Fyre Lake in the amount of $23,228 and did not otherwise dispute the Amended Complaint. IRS Answer 2.

On September 27, 2013, the FDIC filed a "Motion for Entry of Judgment of Foreclosure and Sale." ECF No. 75. After some responses and an FDIC motion to expedite, ECF No. 82, the Court denied the FDIC's motion, noting procedural defects in the FDIC's proposed form of

notice for the foreclosure sale, and explaining that the proper vehicle for such a motion in federal court, as opposed to Illinois state court, was a motion for summary judgment. Feb. 20, 2014 Text Order. The FDIC returned on April 10, 2014 with a motion for summary judgment on Count I of the Amended Complaint, the foreclosure claim, ECF No. 85. On April 28, the FDIC filed a motion for summary judgment as to its claims in subsequent Counts against Defendants Minton, Yates, Lee, Epping, Frye, and Gaugert. ECF No. 86. Several defendants pointed out, via motion, that there were defects in the FDIC's affidavits in support of its motion for summary judgment, and that the FDIC had failed to include a proposed order of foreclosure, both of which defects the FDIC eventually remedied by the expedient of filing these documents piecemeal. ECF Nos. 95, 96, 97. Meanwhile, Defendant Hoffman moved for summary judgment against the FDIC, ECF No. 89.

On August 5, 2014, the FDIC filed another motion to expedite, ECF No. 106. On October 22, 2014, Lee was dropped from the case pursuant to a stipulated dismissal, ECF No. 110. Epping and Gaugert were also dropped due to stipulated dismissals on November 25, 2014, ECF No. 113. On November 11, 2014, Minton filed a Suggestion of Bankruptcy, ECF No. 111, which prompted the Court to stay the case as to Minton, Dec. 2, 2014 Minute Entry. On November 24, 2014, the FDIC moved for default judgment as to Van Henkelum, ECF No. 112, and the Court subsequently issued an order granting default, Dec. 4, 2014 Text Order.

On December 29, the FDIC assigned its interest in this matter to the Bank of Commerce, ECF No. 114. On January 5, 2015, the Bank moved for a status conference, and on February 16, 2015, moved for summary judgment as to Hoffman, ECF No. 116.

**DISCUSSION**

There has been a jumbled concatenation of filings in this case. In an attempt at clarity, the Court treats each pending motion below in the order it was filed.

I.      **Plaintiff's Motion for Summary Judgment Against Fyre Lake:  Foreclosure**

        **A.  Legal Standard on a Motion for Summary Judgment**

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial—that is, whether there is evidence favoring the non-moving party sufficient for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). There can be no genuine issue as to any material fact, however, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When the FDIC, acting in its capacity as receiver, is a party to a case, the case is "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A). The cause of action for foreclosure in this case derives from the Illinois law governing mortgages and foreclosures. 735 ILCS 5/15. The Court therefore applies the substantive law of Illinois and the procedural law of the United States. *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 390 (7th Cir. 2002); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

## B. Analysis

Plaintiff seeks to foreclose on a property Fyre Lake mortgaged as security for a loan. As noted above, three motions were filed in opposition to Plaintiff's motion for summary judgment (ECF Nos. 87, 93, 99). Each, however, addressed only formal defects in the motion for summary judgment that were later remedied. ECF No. 95, 96, 97. Fyre Lake never filed a substantive response to the motion for summary judgment. Thus, although the Court construes the evidence in the record in the light most favorable to Fyre Lake, the Court is bound to accept as undisputed the record materials filed to supplement his motion, ECF Nos. 95, 96, 97, and, if Plaintiff is entitled to judgment as a matter of law on that basis, bound to grant it. *See Pike v. Nick's English Hut, Inc.*, 937 F. Supp. 2d 956, 959 (S.D. Ind. 2013) ("[E]ntry of a summary judgment motion as unopposed does not automatically give rise to a grant of summary judgment. Instead 'the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate.'" (quoting *Aguiar–Carrasquillo v. Agosto–Alicea*, 445 F.3d 19, 25 (1st Cir. 2006)).

The undisputed facts, listed and supported by exhibits supplementary to Plaintiff's motion, demonstrate that Fyre Lake has defaulted on its debt obligation, and that foreclosure must follow. Fyre Lake executed a note on April 27, 2009, indicating that it owed $9,000,000 to

Country Bank, to be paid back in monthly installments at a variable rate of interest 3.25% above

the U.S. Prime Rate. Fyre Lake Note 1, ECF No. 85-3. The Note indicates that it was secured

by a separate mortgage dated April 27, 2009. *Id.* That mortgage indicates that if the mortgagor

fails to make a monthly payment, default occurs. Mortgage 4, ECF No. 85-4. The mortgage

provides that if default occurs, the lender may accelerate the secured debt and foreclose on the

mortgaged property. *Id.* It also provides that if default occurs, the mortgager must pay the

lender's expenses in protecting and preserving the mortgaged property, and attorney's fees. *Id.*

It is undisputed that Fyre Lake failed to make payments on the note secured by the mortgage.

Mot. Summ. J 3, ECF No. 85. The Bank is now entitled to foreclose on the note, having

obtained the right from the FDIC, which obtained it from Country Bank. Mot. to Substitute

Party, ECF No. 114; Mot. Summ. J. 3–4, ECF No. 85.

As noted above, Fyre Lake presents no evidence to contradict this, and points to no issues

of disputed fact, nor does it make any argument as to why the Bank is not entitled to judgment as

a matter of law. In support of its request for a summary judgment of foreclosure, Plaintiff argues

that under Illinois law, when an allegation of fact in a mortgage foreclosure complaint is not

denied by verified answer, or where a party merely denies knowledge of a fact alleged, then a

sworn verification of the complaint or separate affidavit setting forth the relevant facts is

sufficient evidence at trial of the facts pled. Mot. Summ. J. 6; 735 ILCS 5/15-1506(a)(1). The

Court agrees with Plaintiff that this rule applies to federal courts applying the Illinois law of

foreclosures. *Harris N.A v. United States*, No. 10 C 2352, 2011 WL 833620, at *2 (N.D. Ill.

Mar. 4, 2011); *see Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 302 (7th Cir. 2010) ("If an

ostensibly procedural rule of state law is confined to a particular substantive area of law, this

suggests that it probably was motivated by substantive concerns and therefore should be applied

by the federal court in a case governed by state law.").  The law further provides that "where all the allegations of fact in the complaint have been proved by verification of the complaint or affidavit, the court upon motion supported by an affidavit stating the amount which is due the mortgagee, shall enter a judgment of foreclosure as requested in the complaint."  735 ILCS 5/15-1506(a)(2).  The bank has more than met this standard by the documents it has submitted; its Amended Complaint, ECF No. 45, is verified, and it has submitted affidavits stating the amount due sworn to by the appropriate individuals.  ECF Nos. 95, 96.  Thus, the Bank is also entitled to a judgment of foreclosure as a matter of Illinois law.

Plaintiff also asks that the interests of certain named defendants who have responded to the Amended Complaint (the Internal Revenue Service, QC Silt Fence, and Van Henkelum and Lynch and Associates) be declared junior to its own, and that other named defendants who did not respond, as well as "Unknown Owners and Non-Record Claimants," be declared in default, and have any interest they may have declared junior.  Mot. Summ. J. 7–8.  No other party has claimed that it has a superior claim to the Bank's, and, no evidence to the contrary appearing, the Court also grants Plaintiff's request to have its interest in the mortgaged property declared superior to the interests of those parties who answered its Amended Complaint.

The Court has reviewed and finds sufficiently clear Plaintiff's claimed legal fees and receivership expenses, to which it is entitled by the terms of its agreement with Fyre Lake.  ECF Nos. 95, 96.  As noted in the Affidavit of Michael Guerry, attorney's fees and receivership expenses have been accruing since the time the affidavits on these topics were filed.  Guerry Aff. ¶ 4, ECF No. 95.  The Court adopts the expenses described in Plaintiff's draft order of May 8, 2014, and, as explained below, orders that the lien on the property being foreclosed upon include the appropriate additional amount of interest and management fees accrued since that time.

The Court notes that, once more, Plaintiff has conflated Illinois and federal mortgage practice. Illinois law mandates the publication of notice of a public sale for three consecutive weeks before a sale is conducted, which Plaintiff requests. 735 ILCS 5/15-1507(c). But federal foreclosure law requires four weeks of publication prior to a public sale. 28 U.S.C. §2002. Accordingly, four weeks of publication prior to sale are ordered.

Therefore, the Court orders that:

1. By virtue of the Note and the Mortgage alleged in the Complaint and established by the Plaintiff's affidavits as of April 1, 2014, there is due to the Plaintiff, and it has a valid and subsisting lien upon the property hereinafter described, as follows:

   (a) Costs and Expenses

   | | | |
   |---|---|---|
   | Attorney's Fees: | $ | 104,802.52 |
   | Legal Expenses: | $ | 21,174.70 |
   | Property Insurance: | $ | 4,098.00 |
   | Receiver's Fees and Expenses: | $ | 12,316.32 |
   | Inspection Fee: | $ | 470.50 |

   (b) For the Use and Benefit of Plaintiff, as an owners and holder of the Note and the Mortgage, but subject and subordinate to the lien for the payment of the items mentioned in subparagraph (a) in this paragraph

   | | | |
   |---|---|---|
   | Loan Principal: | $ | 8,130,000.00 |
   | Interest as of January 5, 2013: | $ | 1,780,583.00 |
   | Default Interest: | $ | 533,870.08 |
   | TOTAL: | $ | 10,587,315.12 |

(c)  Additionally, any advances made in order to protect the lien of the judgment and preserve the real estate taxes or assessments, property maintenance, and insurance premiums incurred by the Plaintiff after the date this judgment is entered and prior to the Sheriff's Sale. Any such item expense shall become an additional indebtedness secured by the judgment lien and bear interest from the date of advance at the legal rate.

(d)  This Court has reviewed the foregoing costs and fees and finds they were necessarily incurred in connection with the prosecution of this suit, they are fair, reasonable and customary, and they are approved and allowed.

2.  (a)  The Mortgage constitutes a valid lien upon the real estate hereinafter described, which is prior, paramount and superior to the rights and interest of all of the following parties: Fyre Lake Ventures, LLC, U.S. Department of the Treasury - Internal Revenue Service, Director of Employment Security of the State Of Illinois, 3-D Concrete, Inc., Midwest Golf Development, Inc. d/b/a Golf Creations, QC Silt Fence, Inc., Rock River Electric, Inc., Van Henkelum, Lynch & Associates, LLC, V2G Surveying, LLC and Unknown Owners and Non-Record Claimants. The rights and interest of all such parties and Unknown Owners and Non-Record Claimants are subject, subordinate and inferior to the rights of the Plaintiff herein.

(b)  The lien rights of the Plaintiff and the right, title, interest, claim or lien of any and all parties in this foreclosure and all non-record claimants and unknown owners shall be terminated upon the confirmation of a judicial sale.

3.  The name of the Defendants who may be personally liable for the deficiency, if any, are Fyre Lake Ventures, LLC, Blair Minton, Gregory Yates, Kenneth Hoffman, Jr., Paul Van

Henkellum, Gerald Lee, Jerome Epping, Jeffrey Frye and James Gaugert, only to the extent of their respective maximum liabilities under their guaranties.

4. The lien claim of the U.S. Department of the Treasury- Internal Revenue Service constitutes a valid and perfected, but junior, second lien upon the property which is described herein.

5. Each of the following Defendants is in default: Director of Employment Security of the State of Illinois, 3-D Concrete, Inc., Midwest Golf Development, Inc. d/b/a Golf Creations, Rock River Electric, Inc., and V2G Surveying, LLC.

6. The mortgaged real estate is not residential property as defined in Section 15-1219 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1219). The right of redemption has been waived.

7. The real estate mortgaged by Fyre Lake (described with specificity in Exhibit A, attached to this Order), with all improvements, fixtures, and appurtenances hereto, or so much of the real estate which may be divisible and sold separately without material injury to the parties in interest, shall be sold to the highest bidder for cash. The Sheriff of Mercer County is authorized to make such a sale by public auction, at a time and place to be selected by said Sheriff.[2]

8. The Sheriff is authorized to execute this judgment and shall, either himself or by designation of the Plaintiff to do so, give public notice of the time, place, and terms of such sale by publishing same once in each week for four consecutive calendar weeks (Sunday through Saturday), the first such notice to be published not more than 35 days

---

[2] In federal court, foreclosure sales are usually conducted by an appointed commissioner, *see Bancboston Mortgage Corp. v. Pieroni*, 765 F. Supp. 429, 430 n.2 (N.D. Ill. 1991), because federal courts are not subject to the constraints on sales agents that bind Illinois courts. However, Plaintiff has requested the sale to be conducted by the Sheriff of Mercer County.

prior to the sale and the last such notice to be published not less than 7 days prior to the sale; that said notice shall be by an advertisement in a newspaper circulated to the general public in the county in which the real estate is located, in the section where legal notices are commonly placed and by separate advertisement, which may be in the same newspaper, in the section where real estate, other than real estate being sold in a legal proceeding, is commonly advertised to the public. Provided, however, that where said newspaper does not have separate legal and real estate sections, a single advertisement shall be sufficient.

9. Said sale may be adjourned at the discretion of the party conducting it provided, however, that if the adjourned sale date is to occur less than 30 days after the last scheduled sale, notice may be given only once, and not less than 5 days prior to the date of adjourned sale.

10. Plaintiff, or any of the parties herein, may become the purchaser at such sale; that if Plaintiff is the successful bidder at said sale, the amount due the Plaintiff, plus all costs, advances and fees hereunder, shall be taken as a credit on the bid.

11. The Sheriff, upon making such sale, should immediately execute and deliver to the purchaser a receipt of sale and, with all convenient speed, file a Report of Sale and Distribution with the Court for its approval and confirmation; that said Sheriff shall include in the Report of Sale a breakdown of the distribution of the sale proceeds and attach a copy of the Receipt of Sale; that out of the proceeds of sale, distribution shall be made in the following order of priority:

    a) To the Sheriff for his disbursements and commission;

b) To the Plaintiff or its attorney, the amount set forth in Paragraph 1, *supra*, plus any additional costs of sale, additional accrued interest on the loan the mortgage secured since April 1, 2014, and additional accrued expenses of managing the property since April 1, 2014.

12. If, after payment of the above items, there shall be a remainder, the Sheriff should hold the surplus subject to the further Order of this Court; that, if there are insufficient funds to pay in full the amounts found due herein, the Sheriff shall specify the amount of this deficiency in its Report of Sale.

13. Upon confirmation of the sale, the party conducting said sale may issue a Certificate of Sale in recordable form describing the real estate purchased and the amount paid therefor and this Certificate shall be freely assignable; that after Paragraph (i) the expiration of all of the mortgagors' reinstatement and redemption rights and possession, (ii) upon confirmation of sale, and (iii) upon payment of the purchase price and any other amounts required to be paid by the purchaser at sale, the party conducting the sale shall, upon the request of the holder of the Certificate of Sale, or the purchaser if no Certificate of Sale is issued, execute and deliver to the holder or purchaser a deed sufficient to convey title; that said conveyance shall be an entire bar to all claims of the parties to the foreclosure and all persons claiming thereunder and all claims of unknown owners and any non-record claimants.

14. The parties hereto who shall be in possession of said premises, or any part thereof, or any person who may have come in to such possession under them, or any of the, since the commencement of this suit, shall, as of the date 30 days after the confirmation of the Sheriff's Sale, surrender possession of said premises to the purchaser, his representatives

or assigns; that the Order confirming the said sale shall so provide; that said Order shall also provide that the Sheriff may execute on said Order and evict any remaining occupants without further notice order of Court.

15. The Court retains authority during the entire pendency of the foreclosure and until disposition of all matters arising out of the foreclosure.

## II.     Plaintiff's Motion for Summary Judgment as to Defendant Guarantors Minton, Yates, Lee, Epping, Frye, and Gaugert

Plaintiff moves for summary judgment against the above-named guarantors of the loan to Fyre Lake. ECF No. 86. In each case, Plaintiff alleges that the guarantor executed and delivered a personal guarantee to Country Bank in certain amounts. The guarantors variously assert as defenses that their guarantees were obtained without valuable consideration, or through a course of fraud and self-dealing on the part of Country Bank, who initially obtained the loan guarantees.

Since the time of Plaintiff's motion, Lee, Epping, and Gaugert have been voluntarily dismissed as parties from the case, ECF Nos. 100, 113. The motion for summary judgment is thus moot as to them, as is Lee's Motion for Extension of Time to respond, ECF No. 105. In addition, Minton filed a Suggestion of Bankruptcy, ECF No. 111, indicating that he had filed a petition for bankruptcy under Chapter 7. A Chapter 7 Bankruptcy petition operates as a stay, applicable to all entities, of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). The Court stayed proceedings as to Minton. Dec. 2, 2014 Minute Entry. Thus, judgment as to Minton is not appropriate at this time. Only Yates and

Frye remain as defendants against whom summary judgment can be sought. Neither Yates nor Frye filed anything in opposition to the motion.

## A. Legal Framework

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See* discussion *supra*.

When the FDIC takes over a failed bank, it has to be able to rely on the asset records the bank possesses, and be able to make an accurate determination of those assets' worth without fear that its attempts to collect on loan agreements it acquires will be hindered by claims of unknown and unrecorded warranties on the loans. *Langley v. FDIC*, 484 U.S. 86, 91 (1987). For this reason, the Supreme Court recognized the importance of protecting the FDIC from unrecorded prior claims or arrangements made by third parties with banks whose assets the FDIC took over when the banks failed. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 456–57 (1942); *Langley*, 484 U.S. at 92–93. This reasoning, known as the *D'Oench* doctrine, has been codified by statute:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement:
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). The statute requires any alleged agreement tending to diminish or defeat the FDIC's interest in acquired assets to meet a four-part requirement: that it be written, executed by the institution and any person claiming interest in it, that it be approved by the institution's board of directors, and that it have been continuously on file at the depository institution. Furthermore, any agreement which does not meet these four requirements "shall not form the basis of, *or substantially comprise*, a claim against the receiver or the Corporation." 12 U.S.C. § 1821(d)(9)(A) (emphasis added). The Supreme Court has explained the purpose of § 1823(e) as being "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets . . . [because s]uch evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities . . . ." *Langley*, 484 U.S. at 91.

The "agreements" that cannot form the basis of a claim against the FDIC as receiver are to be construed broadly. *See Langley*, 484 U.S. at 92–93 (explaining that under *D'Oench*, the set of unrecorded agreements unenforceable against the FDIC included more than just agreements to perform an act in the future). *Langley* has been interpreted to bar claims against the FDIC Receiver based on implied warranties about goods or services bargained for, and also supposed negative or affirmative untruthfulness, if these agreements are offered as an explanation for why a party should not be held to the terms of the contract. *See Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989) (noting that the federal "receiver of a failed bank . . . [is] entitled to enforce [a] writing without regard to understandings or defenses applicable to the original parties"); *McCullough v. FDIC*, 987 F.2d 870, 872 (1st Cir. 1993) (reading *Langley* to mean that "a contractually bound party's attempt to avoid a contractual obligation and/or to seek damages through a claim of misrepresentation is nothing

more than a challenge to the truthfulness of a warranty . . . and a concomitant claim that the truthfulness of that warranty was a condition of the first party's performance"); *FDIC v. Bell*, 892 F.2d 64, 65–66 (10th Cir. 1989) (holding that *Langley* barred a defense based on bank's failure to disclose a material fact regarding financial condition of company whose obligations were guaranteed by defendant).

Thus, when a party alleges, on the basis of misrepresentations or implied warranties, that the party was fraudulently induced into a debt obligation to a bank taken over by the FDIC as receiver, such promises or representations are "agreements" that cannot "substantially comprise" a claim against the FDIC unless they meet the four-part recording requirement of § 1823(e). In practical terms, this means that fraud in the inducement is not a defense to an action to collect a debt by the FDIC as receiver, and that claims of fraud or conspiracy against the FDIC receiver fail when they are substantially supported by representations or promises that do not meet the four-part requirement of Section 1823(e). *See FDIC v. Kratz*, 898 F.2d 669, 671 (8th Cir. 1990) (holding that 12 U.S.C. § 1823(e) precludes the defense of fraud in the inducement unless the representation met the recording requirements).

Section 1823(e) extends to claims made seeking exoneration from or suing on fraud arising from loan guaranties:

> The Court [in *Langley*] explained that one of the purposes underlying § 1823(e) is to allow the FDIC to rely on a bank's records in assessing its financial condition. The reliability of this assessment, according to the Court, necessarily depends on protecting the FDIC from undisclosed conditions to facially unqualified notes. Likewise, because the FDIC relies on the existence and strength of guaranties in assessing the financial condition of a bank, it also must be protected from undisclosed conditions to seemingly unqualified guaranties.

*FDIC v. Galloway*, 856 F.2d 112, 115 (10th Cir. 1988) (citing *Langley*) (internal citations omitted).

When the FDIC assigns notes or other debt instruments acquired from a failed bank, the assignees are entitled to assert the same *D'Oench* protections as the FDIC would have been able to. *King*, 1992 WL 402966 at *3; *FDIC v. Newhart*, 892 F.2d 47, 50 (8th Cir. 1989) ("In certain cases . . . the FDIC may decide to sell returned assets after bringing suit for collection. Because these assets are usually nonperforming loans, there would be little or no incentive for prospective purchasers to acquire them if they were subject to the personal defenses of the obligors based on undisclosed agreements.").

## B. Analysis

Plaintiff supplies guaranties executed by Yates, ECF No. 86-2, and Frye, ECF No. 86-5. The language used in the forms is identical, with only the entered details differing. Each guarantor agrees to guarantee to Country Bank "the payment and performance of each and every debt, liability, and obligation of every type and description which [Fyre Lake Ventures] may now or at any time hereafter owe." Yates Guaranty 1. Yates made himself liable for Fyre Lake's debts to a maximum of $900,000, as shown in an attached schedule of entities that Yates guaranteed to Country Bank. Frye agreed to guarantee the debt obligations of Fyre Lake in the same way, but to a maximum value of only $325,000. Frye Guaranty 1. It is undisputed that Plaintiff has made demands under the guaranties against Yates and Frye. Mot. Summ. J. 5. Plaintiff now seeks judgments in these amounts from Yates and Frye.

Pointing to the guarantees and *D'Oench* doctrine, Plaintiff argues that, absent a contemporaneous writing that meets the *D'Oench* standard and casts doubt on the validity of the guarantees, Plaintiff is entitled to judgment on them as a matter of law. Mot. Summ. J. 6–14. Since Yates and Frye did not bother to contest Plaintiff's motion for summary judgment, their only counter to Plaintiff's assertions comes from the affirmative defenses they listed in their

Answers.  Yates asserted that his guaranty was obtained without valuable consideration, and via a course of self-dealing.  Yates Answer 17.  Frye asserted that his guaranty was obtained without valuable consideration and through a course of self-dealing.  Frye Answer 15–17.  However, even when a party does actively oppose a motion for summary judgment, she must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted).  Here, neither defendant has gone beyond the pleadings; in fact, both failed to respond to Plaintiff's motion.  Further, Plaintiff's motion points to undisputed evidence in the record sufficient to show that it is entitled to judgment as a matter of law.  The Court agrees with Plaintiff that the *D'Oench* doctrine applies to this case, and operates to bar the conclusory defenses both defendants raised in their pleadings, absent a writing executed by Country Bank and approved by its board of directors that has been continuously on file.  *See FDIC v. Wright*, 942 F.2d 1089, 1097 (7th Cir. 1991) (holding that *D'Oench* doctrine barred a defense of lack of consideration against "facially unqualified" notes).

In any case, defendants have made no showing of any kind to support the affirmative defenses they raised.  Plaintiff is entitled to judgment against Yates in the amount of $900,000, and against Frye in the amount of $325,000.  Plaintiff is also entitled to judgment against Yates and Frye of all interest that has accrued to this point, and costs and expenses, including reasonable attorney's fees, as provided for by the guaranties that Yates and Frye signed.  Yates Guaranty 1, Frye Guaranty 1.

## III.    Hoffman's Motion for Summary Judgment Against Plaintiff

Hoffman moved for summary judgment, ECF No. 89, arguing that he had entered into a settlement agreement and release with the FDIC, ECF No. 89-1, on an unrelated debt obligation, and that thus, the FDIC's claim against him on his guaranty of Fyre Lake for $900,000 "fails as a matter of law." Hoffman Mot. Summ. J. 2. The Bank has also moved for summary judgment against Hoffman, but, as the motion is not fully briefed yet, the Court declines to consider it at this time.

## A. Factual Background for the Settlement Agreement[3]

On April 25, 2011, Country Bank loaned Hoffman and his wife $157,300. The note for this loan was secured by three pieces of real estate in Milan, Illinois. The Hoffmans later defaulted. On October 15, 2012, Hoffman and his wife contracted with the FDIC, which had taken over Country Bank, to tender the deeds for these three properties in lieu of foreclosure. This contract (the "Release") explained that the arrangement came "after extensive negotiations between FDIC-Receiver and [the Hoffmans] and their respective attorneys, and the exchange of information, and in the interests of avoiding litigation and its attendant costs." Hoffman Release 2. In a paragraph entitled "Tender of Deeds in Lieu of Foreclosure," the parties agreed:

> In consideration for the FDIC-Receiver releasing all actual and potential claims [it] has against the Released Parties, the Released Parties agree to tender to FDIC-Receiver the aforementioned Deeds In Lieu of Foreclosure, pursuant to 735 ILCS 5/15-1401 . . . which shall terminate the Released Parties' interests in the properties and relieve the Released Parties, and each of them, from any further liability whatsoever arising out of or otherwise related to, the Loan Documents or the Properties.

*Id.* at 3. The next paragraph, entitled "Release of Released Parties," reads in relevant part:

> For itself . . . FDIC-RECEIVER hereby releases and discharges [the Hoffmans] . . . . from any and all liabilities, obligations, claims, actions, causes of action, liens, fees and demands of whatsoever kind or nature, whether known or unknown, that

---

[3] Unless otherwise noted, these facts are those undisputed between the two parties, taken from their respective statements of material facts pertaining to Hoffman's motion for summary judgment. *See* Hoffman Statement of Facts Undisputed, ECF No. 91; Resp. Hoffman Mot. Summ. J. 2–5, ECF No. 94; Hoffman Reply 1–2, ECF No. 101.

FDIC-RECEIVER had, now has, or may have against such Released Parties, including, but not limited to, those arising out of, based on, or in any way connected with the Loan Documents, or any portion thereof, or the Properties or relating to claims raised against the released parties.

*Id.* The Release goes on to stipulate that it shall be construed under the laws of Illinois. *Id.* at 4.

The Release makes no mention of the Fyre Lake loan that Hoffman guaranteed.

### B. Legal Framework

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See* discussion *supra.* By its terms, the release agreement at issue here is to be construed according to the contract law of Illinois, and the Court so construes it. *See Piper Aircraft v. Reyno*, 454 U.S. 235, 243 n.8 (1981) (stating that "a [federal] court ordinarily must apply the choice-of-law rules of the state in which it sits" (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)); *In re Marriage of Adams*, 551 N.E.2d 635, 638 (1990) (citing *Reighley v. Cont'l Ill. Nat'l Bank & Trust Co.*, 61 N.E.2d 29, 33 (Ill. 1945) (recognizing the applicability of choice of law clauses in contracts)). Federal courts' "role in interpreting a question of state law is to predict how the highest court of the state would answer the question." *Cannon v. Burge*, 752 F.3d 1079, 1091 (7th Cir. 2014).

A release is a type of contract in which "a party abandons a claim to a person against whom that claim exists." *Whitehead v. Fleet Towing Co.*, 442 N.E.2d 1362, 1364 (Ill. App. Ct. 1982) (citing *Murphy v. S-M Delaware, Inc.*, 420 N.E.2d 456, 459 (Ill. App. Ct. 1981)). A court's main objective in interpreting a contract is to give effect to the intent of the parties. *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). In doing so, a court must look at the whole contract, rather than particular portions in isolation:

> A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent . . . . Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others . . . . The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself.

*Id.* at 233 (citations omitted). Where no ambiguity exists, the parties' intention must be determined from the contract itself. *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991). A contract is ambiguous when it is "susceptible to more than one reasonable meaning or obscure in meaning through indefiniteness of expression." *Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill. App. Ct. 1997). A release is thus ambiguous when it "contains conflicting release provisions that express different intentions." *Countryman*, 686 N.E.2d at 64.

In Illinois, "[g]eneral words of release are restrained in effect by the specific recitals contained in the instrument . . . . Illinois courts restrict the language of a general release to the things or persons intended to be released and refuse to interpret generalities to defeat a valid claim not then in the minds of the parties." *Farmers Auto. Ins. Ass'n v. Kraemer,* 857 N.E.2d 691, 694 (Ill. App. Ct. 2006). Where a contract is "susceptible to one of two constructions," one of which is "fair, customary, and such as prudent men would naturally execute," and the other of which is "inequitable, unusual, or such as reasonable men would not be likely to enter into," courts must prefer "interpretation which makes rational and probable agreement." *Chicago Title & Trust Co. v. Telco Capital Corp.*, 685 N.E.2d 952, 955–56 (Ill. App. Ct. 1997).

## C. Analysis

Hoffman claims that when the FDIC released him from his joint debt with his wife in the amount of $157,300, in exchange for forfeiting that loan's three-deed collateral the FDIC also, by the same Release, discharged Hoffman from any obligation to repay any other debts he might owe the FDIC. In support of this argument, Defendant points only to the paragraph of general

language in the Release entitled "Release of Released Parties" releasing him from "all liabilities . . . of whatsoever kind or nature, whether known or unknown."  Hoffman Release 3.  He argues that the plain meaning of that paragraph's many recitations is that the FDIC and Hoffman agreed, in executing this release upon tender of the three deeds, not only that Hoffman and his wife would be released from the debt the deeds had secured, but also that he would be released from all other obligations to the FDIC.  Hoffman Mem. Supp. Mot. Summ. J. 5–6.  Hoffman urges that the language of the contract is unambiguous, and that thus, no genuine issue of fact exists and the Court may rule on his Motion and dismiss the case.  *Id.*

The contract, read as a whole, however, is ambiguous because it contains contradictory release provisions.  *Countryman*, 686 N.E.2d at 64.  The bulk of the Release seems intended to release the Hoffmans from a specific loan debt, in exchange for the collateral the Hoffmans had initially offered to secure the loan.  In the paragraph entitled "Tender of Deeds In Lieu of Foreclosure," the parties clearly agreed that, in exchange for the deeds to three properties, the FDIC-Receiver would release the Hoffmans from liability "arising out of, or otherwise related to, the Loan Documents or the Properties."  Hoffman Release 3.  Earlier language in the contract makes it clear that the exchange of deeds for release from liability was a means for the FDIC-Receiver and the Hoffmans to avoid the expense that would result if the FDIC-Receiver initiated formal foreclosure proceedings.  *See id.* at 2.  Nowhere in the contract outside of the paragraph labeled "Release of Released Parties" is it suggested that the Release would release the Hoffmans, jointly or individually, from any other liabilities or debt obligations to the FDIC-Receiver.

However, the "Release of Released Parties" paragraph, upon which Hoffman relies, does state that Hoffman and his wife are together and respectively released from "any and all

liabilities, obligations, claims, actions, causes of action, liens, fees, and demands of whatsoever kind or nature, whether known or unknown, that FDIC-RECEIVER had, now has, or may have against [them], including but not limited to" the $157,300 liability from which the rest of the contract releases the Hoffmans. Hoffman Release 3. Plaintiff describes this sweeping release as "standard boilerplate general release language." Resp. Hoffman Summ. J. Perhaps it is, but it means what it says. The literal effect of this language is to release Defendants, jointly and individually, from all present and future liabilities to Plaintiff, known or unknown, which would include Hoffman's promise to cover Fyre Lake's liabilities up to $900,000.

Under Illinois law, such clearly conflicting language renders a contract ambiguous. *See Whitlock*, 581 N.E.2d at 667 (finding a release ambiguous where a bank released a debtor with specific release language only as to one loan, but, in another paragraph, used general language that might have been taken to release the debtor from another loan owed to the same bank); *Countryman*, 686 N.E.2d at 64 (finding ambiguous a release that referred repeatedly to a single incident for most of its length, but also contained "general and sweeping language" that included "any other accident, injury, aggravation, or onset of symptoms" that a party might seek to sue on). The Release is thus ambiguous as a matter of law. *See id.* at 64.

When a contract is ambiguous, "the parties' intent must be determined from an examination of extrinsic evidence by the trier of fact." Whitlock, 581 N.E.2d at 667. Such determination is "generally a question of fact subject to rules of contract construction and parol evidence." *Countryman*, 686 N.E.2d at 63–64. However, at the summary judgment stage a district court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 249. At this phase of the proceedings, and with the evidence currently before it, the Court does not have

sufficient information before it to determine whether the Release was intended by the parties to release Hoffman from the liabilities to Plaintiff upon which Plaintiff now sues. Hoffman makes no argument, persuasive or otherwise, why it would be more reasonable to interpret the Release as releasing him from all liabilities whatsoever to Plaintiff, rather than to the specific liability that gave rise to the Release. *See Telco*, 685 N.E.2d at 955. Instead, Hoffman supports his Motion for Summary Judgment only with the argument that the portions of the Release that use general language are themselves not ambiguous. This argument fails, as explained above, because the Release as a whole is ambiguous, and thus its interpretation is a question of fact and construal of the whole contract, and cannot be disposed of by the isolated interpretation of one paragraph.

There is no factual material in the record at this point, disputed or otherwise, bearing on what the parties' intentions in executing the Release were; therefore, summary judgment is not appropriate at this time.

## IV.     Plaintiff's Motion for Default Judgment Against Van Henkelum

Plaintiff moved, ECF No. 112, for default judgment against Paul Van Henkelum. In properly ordering the clerk to enter Van Henkelum's default, the Magistrate Judge noted that Van Henkelum had failed either to plead or defend. Nov. 25, 2014 Text Order. The Court now grants Plaintiff's Motion for Default Judgment against Van Henkelum, in the amount that Van Henkelum agreed to guarantee; to wit, $900,000, plus all accrued interest, late charges, costs of collection and attorney's fees, as provided for by the guaranty that Van Henkelum signed. Van Henkelum Guaranty, ECF No. 45-11.

## CONCLUSION

Plaintiff's Motion for Summary Judgment on its foreclosure claim, ECF No. 85, is GRANTED against Fyre Lake Ventures, LLC. Plaintiff's Motion for Summary Judgment against certain of the guarantors, ECF No. 86, is GRANTED IN PART, as to Yates and Frye, and DENIED IN PART as to Minton, Epping, Gaugert and Lee, for the reasons explained above. Hoffman's Motion for Summary Judgment, ECF No. 89, is DENIED. Plaintiff's Motion for Default Judgment against Van Henkelum, ECF No. 112, is GRANTED. Lee's Motion for Extension of Time, ECF No. 105, is MOOT. The Bank's Motion to Expedite, ECF No. 106, and its Motion for Status Conference, ECF No. 115, are MOOT. Pursuant to Rule 54(b), the Court finds that there is no just reason to delay entry of judgment as to the Bank's foreclosure claim, Count I of the Amended Complaint, ECF No. 45. The Clerk is directed to enter judgment as to Count I. However, the Court declines at this time to enter judgment as to the other guarantors, in light of the Bank's pending Motion for Summary Judgment, ECF No. 116, against Hoffman as a guarantor.

Entered this 13th day of March, 2015.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE